IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAII

| | | |
|---|---|---|
| GUY ST. CLAIR COMBS; ET AL., | ) | |
| | ) | |
| Plaintiffs, | ) | Civil No. 05-00741 REJ-KSC |
| | ) | |
| v. | ) | <u>OPINION AND ORDER</u> |
| | ) | |
| STEPHEN M. CASE; ET AL., | ) | |
| | ) | |
| Defendants. | ) | |

Damon M. Senaha
LAW OFFICE OF DAMON SENAHA
95-214 Hoakua Place
Mililani, HI  96789

John L. McDermott
Century Square
1188 Bishop Street, Suite 711
Honolulu, HI  96813

Matthew H. Simmons
Seann P. Malloy
SIMMONS & ASSOCIATES, CHARTERED
7347 Wisconsin Avenue, Suite 200
Bethesda, MD  20814

 Attorneys for Plaintiffs

Paul Alston
David A. Nakashima
Stephen M. Tannenbaum
ALSTON HUNT FLOYD & ING
ASB Tower
1001 Bishop Street, Suite 1800
Honolulu, HI  96813

     Attorneys for Defendants

JONES, Judge:

This action is before the court on three motions for summary judgment:  (1) defendants' motion (#138) for summary judgment based upon statute of ultimate repose; (2) defendants' motion (# 139) for partial summary judgment re:  rescission and punitive damages; and (3) defendants' motion (# 142) for partial summary judgment re:  improperly named defendants.

For the reasons explained below, defendants' motions are granted and denied as follows: denied as to the statute of ultimate repose; granted as to punitive damages and denied as to rescission; and granted as to defendants The Stephen M. Case Revocable Trust and Ka Po'e Hana LLC, and denied as to the other defendants subject to this motion.

## STANDARD

Summary judgment should be granted if there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  If the moving party shows that there are no genuine issues of material fact, the non-moving party must go beyond the pleadings and designate facts showing an issue for trial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  A scintilla of evidence, or evidence that is merely colorable or not significantly probative, does not present a genuine issue of material fact.  United Steelworkers of America v. Phelps Dodge, 865 F.2d 1539, 1542 (9th Cir. 1989).

PAGE 2 - OPINION AND ORDER

The substantive law governing a claim determines whether a fact is material. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986); see also <u>T.W. Elec. Service v. Pacific Elec. Contractors</u>, 809 F.2d 626, 630 (9th Cir. 1987). Reasonable doubts as to the existence of a material factual issue are resolved against the moving party. <u>T.W. Elec. Service</u>, 809 F.2d at 631. Inferences drawn from facts are viewed in the light most favorable to the non-moving party. <u>Id</u>. at 630-31.

<center>DISCUSSION</center>

1.    <u>Motion re: Statute of Ultimate Repose (# 138)</u>

Plaintiffs filed their complaint on November 30, 2005, one day less than five years after the December 1, 2000, merger between Grove Farm Co., Inc. ("GFCI") and ALPs Acquisition Sub, Inc. Defendants concede that if the expiration of the statute of repose were measured from the merger, plaintiffs' section 10 (b) claims would be timely under 28 U.S.C. § 1658(b)(2), which provides as follows:

> (b)    Notwithstanding subsection (a), a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws * * * may be brought not later than the earlier of –
>
>    (1)    2 years after the discovery of the facts constituting the violation; or
>
>    (2)    5 years after such violation.

28 U.S.C. § 1658(b). In earlier proceedings in this case, I denied defendants' motion for summary judgment based on the two-year limitations period set forth in section 1658(b)(1), holding that a genuine issue of material fact remains as to when the plaintiffs should have discovered the facts constituting the alleged fraud. See <u>Combs, et al v. Case, et al</u>,

PAGE 3 - OPINION AND ORDER

Civil No. 05-741 REJ-KSC (Opinion and Order, Sept. 20, 2007), p. 16.

Defendants now assert that plaintiffs' claims are barred by the five-year statute of repose set forth in section 1658(b)(2) because, according to defendants, plaintiffs' claims accrued and the statute began to run with the circulation of proxy materials on November 3 and 21, 2000. Defendants rely on a single Third Circuit case, In re Exxon Mobil Corp. Securities Litig., 500 F.3d 189 (3rd Cir. 2007), in support of this proposition.

In Exxon, the Third Circuit held that the statute of repose begins to run when the alleged misrepresentation takes place (for example, in this case, with circulation of the proxy materials), or, at the latest, when the parties are "committed" to the exchange of securities before completion of the merger, but not the date on which "[the securities] formally change hands." Exxon, 500 F.3d at 200 and n. 14. While certainly an interesting approach, Exxon has not been adopted by the Ninth Circuit and is not controlling. Plaintiffs cite a number of cases from other jurisdictions in which courts have held that the statute of repose begins to run on the date of the transaction, i.e., the date of a purchase or sale of a security. See Plaintiffs' Memorandum in Opposition, pp. 12-13. My own research confirms that courts are not in agreement on this issue. Indeed, the Ninth Circuit has in the past stated that a plaintiff's securities fraud claim "accrues 'on the date the sale of the instrument is completed.'" Durning v. Citibank, Intern., 990 F.2d 1133, 1136 (9th Cir. 1993)(quoting McCool v. Strata Oil Co., 972 F.2d 1452, 1460 (9th Cir. 1992)).

In Durning, the misrepresentations and the purchase occurred at the same time. Thus, the Durning court was not required to decide which of two possible dates began the running of the statute of repose. Nonetheless, Durning does throw doubt on whether the Ninth Circuit would adopt the position of the Third Circuit in Exxon. Consequently, I decline to adopt the reasoning

of Exxon here.

Plaintiffs assert that even under the reasoning of Exxon, their claims are not time-barred because they were not "committed" to the exchange of securities before completion of the merger, which took place on December 1, 2000, after the shareholder vote. To support this argument, plaintiffs point to the following language in the proxy materials:

> *Revoking Your Proxy.* You may revoke your proxy before it is voted by:
>
> • sending in a new proxy with a later date;
>
> • notifying the Secretary in writing before the meeting that you have revoked your proxy; or
>
> • voting in person.

Plaintiffs' Memorandum in Opposition, Exhibit C. The Exxon court did explain that in the merger context, time limitations "may require a more nuanced analysis. * * * [T]he possible existence of escape clauses in the merger agreement itself, may delay the time when the parties may properly be considered 'committed.'" Exxon, 500 F.3d at 200 n. 14. Whether the above-quoted language from the proxy materials may be construed as rendering plaintiffs "uncommitted" until the December 1, 2000, vote, or whether, as plaintiffs also allege,[1] defendants continued making misrepresentations through the date of the shareholder vote are not issues I must resolve because, as stated, I decline to adopt the Third Circuit approach and hold that plaintiffs' complaint, filed less than five years after the merger and sale of the securities, is timely as a matter of law.

---

[1] Plaintiffs assert that defendants' misrepresentations did not cease with circulation of the proxy materials but continued through to the shareholders meeting and vote on December 1, 2000.

PAGE 5 - OPINION AND ORDER

2.  <u>Motion re: Rescission and Punitive Damages (# 139)</u>

Defendants move for partial summary judgment on plaintiffs' requests for rescission and punitive damages. Plaintiffs concede that they are not entitled to punitive damages on a section 10(b) claim, Plaintiffs' Consolidated Memorandum in Opposition, p. 27; accordingly, that portion of defendants' motion is granted.

In their amended complaint, plaintiffs seek, among other things, total or partial rescission of "the Transactions," (presumably, the merger and/or exchange of shares) and restoration to their status as stockholders of GFCI effective December 1, 2000. Defendants seek summary judgment on this part of plaintiffs' claim, primarily contending that plaintiffs failed to act with "reasonable dispatch" in seeking rescission, rendering their request untimely. Additionally, defendants argue that GFCI is a substantially different company now than it was in 2000, largely due to investments by its new owner and sales of GFCI properties, and that rescission cannot be accomplished without affecting the rights of innocent third parties.

I am not convinced that a pre-trial motion for summary judgment is the appropriate vehicle by which to examine the equities in this action. As defendants note, whether to allow rescission of a transaction is within the court's discretion based on the best interests of the shareholders as a whole.[2] <u>Yamamoto v. Omiya</u>, 564 F.2d 1319, 1323-25 (9th Cir. 1977). The factual record for both a liability determination by the trier of fact and for consideration of remedies, <u>e.g.</u>, damages, partial rescission, etc., is incomplete and wholly insufficient for me to make a definitive ruling on what remedies, legal or equitable, plaintiffs may or may not be

---

[2] Defendants fail to note, however, that only in a very unique case may a trial court properly rule on the scope of remedy before the trial on the merits. <u>Yamamoto v. Omiya</u>, 564 F.2d 1319, 1324 (9th Cir. 1977).

entitled to at the end of trial. I do note, however, that should plaintiffs prevail on liability, they will face a very difficult if not impossible task to convince me that the rescission they seek is either equitable or even possible as a practical matter.

Nonetheless, defendants' motion for summary judgment on plaintiffs' request for rescission is denied at this time.

3.  Motion re:  Improperly Named Parties (# 142)

Defendants move for summary judgment on plaintiffs' claims against certain defendants, described as "improperly named defendants," specifically, defendants Stephen Case, The Stephen M. Case Revocable Trust, Ka Po'e Hana LLC, and ALPs Acquisition Sub, Inc. (the so-called "Case defendants"). The thrust of defendants' motion, however, is not that these defendants were improperly named; rather, defendants contend that as a matter of law, plaintiffs cannot prove their claims against them.

As a preliminary matter, I note that defendants filed this particular motion before I issued my decision on their earlier motion for summary judgment. Their opening argument thus focuses in large part on plaintiffs' claims under section 20A, 15 U.S.C. § 78t-1, which I have dismissed. Consequently, much of defendants' argument is moot.

In their reply, defendants shift focus and urge this court to grant summary judgment on plaintiffs' section 10(b) claims against the Case defendants, arguing that plaintiffs' evidence is insufficient to establish that each Case defendant was a "primary violator" subject to liability under section §10(b), and also is insufficient to establish that the various Case entities are or were alter egos of defendant Stephen Case.

Defendants correctly point out that section 10(b) does not allow recovery for aiding and abetting. Central Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A., 511 U.S. 164, 177-78 (1994). Nonetheless, the absence of aiding and abetting liability under § 10(b) does not mean that secondary actors are free from liability:

> Any person or entity, including a lawyer, accountant, or bank, who employs a manipulative device or makes a material misstatement (or omission) on which a purchaser or seller of securities relies may be liable as a primary violator under 10b-5, assuming *all* of the requirements for primary liability under Rule 10b-5 are met.

Central Bank, 511 U.S. at 191 (emphasis in original).

Thus, a plaintiff pursuing a private action under section 10(b) and Rule 10b-5 "must allege and prove all of the elements for primary liability for each defendant." Simpson v. AOL Time Warner Inc., 452 F.3d 1040, 1047 (9th Cir. 2006). Simpson explained:

> The elements of a securities fraud claim are: (1) to use or employ any manipulative or deceptive device or contrivance; (2) scienter, *i.e.* wrongful state of mind; (3) a connection with the purchase or sale of a security; (4) reliance, often referred to in fraud-on-the-market cases as 'transaction causation;' (5) economic loss; and (6) loss causation, *i.e.* a causal connection between the manipulative or deceptive device or contrivance and the loss.

Simpson, 452 F.3d at 1407 (citation omitted). With respect to "primary violator" liability, the Simpson court held that:

> [T]o be liable as a primary violator of § 10(b) for participation in a 'scheme to defraud,' the defendant must have engaged in conduct that had the principal purpose and effect of creating a false appearance of fact in furtherance of the scheme. It is not enough that a *transaction* in which a defendant was involved had a deceptive purpose and effect; the defendant's *own conduct* contributing to the transaction or overall scheme must have had a deceptive purpose and effect.

Id. at 1408 (emphasis in original). The "principal purpose" aspect of that test is related to but different from the element of scienter required for a section 10(b) claim, which requires proof,

PAGE 8 - OPINION AND ORDER

Case 1:05-cv-00741-REJ-KSC   Document 241   Filed 12/26/07   Page 9 of 11     PageID #: 5774


"in great detail, [of] facts that constitute strong circumstantial evidence of deliberately reckless or conscious disregard." Id. at 1408 n. 5. The "principal purpose" prong "examines instead whether the challenged conduct of the defendant had a principal purpose, and not just an accidental effect, of creating a false appearance as part of a deceptive transaction or fraudulent scheme." Id.

> The Simpson court further explained that:
>
> A test that examines the purpose and effect of a defendant's conduct in an alleged scheme to defraud, as a means to assess whether the defendant used or employed a deceptive device, ensures that the defendant's conduct is sufficiently deceptive to justify imposing primary liability. Thus, when determining whether a defendant is a "primary violator," the conduct of each defendant, while evaluated in its context, must be viewed alone for whether it had the purpose and effect of creating a false appearance of fact in the furtherance of an overall scheme to defraud.

Id. at 1450.

Defendants assert that plaintiffs' submissions on summary judgment fail to raise a genuine issue of fact that any defendant except ALPS Investment, LLC, qualifies as a primary violator. With respect to two of the defendants, The Stephen M. Case Revocable Trust ("Trust") and Ka Po'e Hana LLC, I agree. With respect to the remaining Case defendants subject to this motion, Stephen Case and ALPS Acquisition Sub, Inc., defendants' own submissions underscore the fact-bound nature of the inquiry and highlight the existence of disputed issues of material fact. Moreover, because discovery does not close until February 29, 2008, a liability decision on the present record would be, as plaintiffs suggest, premature.

With respect to defendants Trust and Ka Po'e Hana LLC, however, plaintiffs have failed to explain or support their theory of how these two defendants qualify as "primary violators." The only connection between these two defendants and the alleged misconduct that this court is

able to discern from plaintiffs' pleadings and submissions is that Stephen Case is involved in the two entities. Even assuming that plaintiffs can demonstrate that the two entities were alter egos of defendant Case, such proof would fail to establish that these two defendants engaged in conduct of the type necessary for "primary violator" liability under section 10(b). Consequently, defendants' motion as to the Trust and Ka Po'e Hana LLC is granted.

With respect to the remaining defendants, the record before me is rife with genuine issues of material fact concerning Stephen Case's and the two ALPs defendants' involvement in the merger and sale of stock at issue in this litigation. Whether there was any violation of section 10(b) or whether these defendants' conduct renders them "primary violators" are disputed issues that must be resolved by the trier of fact. Thus, defendants' motion as to defendants Case and ALPS Acquisition Sub, Inc., is denied.

## CONCLUSION

Defendants' motion for summary judgment (# 138) based on statute of ultimate repose is DENIED; defendants' motion for summary judgment (# 139) re: rescission and punitive damages is DENIED as to rescission and GRANTED as to punitive damages; defendants' motion for summary judgment (# 142) re: improperly named defendants is GRANTED as to The Stephen M. Case Revocable Trust and Ka Po'e Hana LLC and DENIED as to Stephen Case and ALPS Acquisition Sub., Inc.

IT IS SO ORDERED.

DATED this 18th day of December, 2007.

 /s/ Robert E. Jones  
ROBERT E. JONES

U.S. District Judge